## CALL v. BILLINGS, Director of the Department of Registration.

No. 6590.   Decided August 5, 1943.   (140 P. 2d 640.)

See 48 C. J., Physicians and Surgeons, sec. 88; 41 Am. Jur., 144 et seq.

*Romney & Nelson,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *A. U. Miner,* Deputy Atty. Gen., for respondents.

MOFFAT, Justice.

This cause originated out of an application by Dr. H. A. Call, herein referred to as plaintiff, to the Director of the Department of Registration for a license to practice naturopathy in the State of Utah. The application was based upon a former license to practice naturopathy in the State of Arizona and the reciprocal provisions of the laws of Utah, Sec. 79-1-19, R. S. U. 1933.

The Department of Registration refused to issue the license. Upon petition to the District Court of the Third Judicial District, an alternative writ of mandamus was issued. The Department made answer and return thereto, and filed a demurrer. The demurrer was overruled, and "pursuant to stipulation of counsel" the court ordered that plaintiff might file an amended complaint (which was done after the cause was heard) and that defendant's answer may be considered an answer thereto, and that "the matter may proceed as a proceeding brought under Sec. 79-1-36, R. S.U. 1933," same section, U. C. A. 1943.

Under date of August 11, 1938, plaintiff filed an application with the Department for a license to practice naturopathy in the State of Utah. His application was based upon the Utah reciprocity statute and his license to practice naturopathy in the State of Arizona. His naturopathic certificate in Arizona was issued to him in August, 1935. He had practiced chiropractic and naturopathy prior to that time for a period of over five years.

Upon a form furnished to plaintiff by the Utah Department of Registration, the following information, over the signatures and verified by the seal of the Arizona State Board of Naturopathic Examiners, is provided. It is certified that Dr. H. A. Call was granted a license to practice naturopathy in the State of Arizona on the 10th day of August, 1935, on the basis of written and oral examination and educational requirements of Chap. 105 of the Laws of 1935.

It is further certified that Dr. Call in his written examination, including one hundred questions, obtained a general average of 90 per cent in the following branches:

"Symptomatology; Physical and Clinical Diagnosis; X-ray and Electrotherapy; Massage and Hydrotherapy; Dietetics; Manipulative and adjustive technic; Orthopedics; Hygiene & Sanitation; Pathology; Drugless Therapeutics."

The certificate also states that "Acting in behalf of the Ariz. State Board of Naturopathic Examiners" the reputability of Dr. Call as it appears of record is certified and he is recommended to the Department of Registration of the State of Utah as a fit and proper person to receive a license. Then follows the statement that: "The State Board of Arizona Naturopathic Examiners hereby agrees to reciprocate the action of the Department of Registration."

Plaintiff's application for a reciprocal naturopathic license was denied. Reasons were given, first, that he did not show sufficient naturopathic training and had not graduated from a high school as required by Sec. 79-9-8 (4), R. S. U. 1933, and, second, because the standards required by Arizona to license a naturopath are not according to the standards required by Utah and that no reciprocal relations have been established. The above reasons, stated as "first" and "second," set forth four reasons, but the matter reduces itself to two propositions: First, may the Department of Registration of Utah go behind the duly authenticated certificate of another State showing a licensed practitioner in good standing and agreeing to reciprocate? If the Department may, then the only question is upon their investigation and findings. Has the Department abused its discretion given by the statute in such matters?

Sec. 79-1-19, U. C. A. 1943, identical with the 1933 section, provides:

"The department may issue a license or certificate without examination to a person who has been licensed or registered after examination in any state, district or territory of the United States or in any foreign

country, whose educational and examinational requirements are or were at the time such license issued equal to those of this state, provided the jurisdiction issuing such original license or certificate will grant similar privileges to persons licensed or registered in this state, but the applicant shall produce satisfactory evidence of identity and good moral character."

There is no question as to identity and good moral character of plaintiff. His application was not denied for lack of either. When the educational and examinational requirements at the time such license was issued by a foreign jurisdiction are or were equal to those of this State, provided reciprocal relations have been established and such foreign jurisdiction grants similar privileges to persons in this State, the Department of Registration of this State may issue a license without examination.

The wording of the statute seems to justify the conclusion that the legislature intended to vest in the Department of Registration some discretion as to, first, the establishment of courtesy relations between Utah and a foreign jurisdiction issuing a license, and, secondly, as to whether the educational standards of the foreign jurisdiction were equal to those of Utah.

The plaintiff was licensed to practice naturopathy in the State of Arizona in 1935. At that time the Utah statute contained a provision for the appointment of a committee by the Department for examination:

"For practitioners of naturopathy, a committee of three members, each of whom shall be a graduate of a school of naturopathy of standing recognized by the department of registration." R. S. U. 1933, Sec. 79-1-5 (11).

The general duties of this committee and others provided for by the department for the various trades, occupations and professions are that they shall submit to the Director standards of qualifications requisite in applicants for licenses and methods of examination of applicants.

"They shall conduct examinations at the request of the director to ascertain the qualifications and fitness of applicants to practice the

profession, trade or occupation for which the examination may be held, shall pass upon the qualifications of applicants for licenses, certificates or permits and shall submit in writing their findings and conclusions to the director." R. S. U. 1933, Sec. 79-1-7, identical with the same numbered section in U. C. A. 1943.

The legislature has vested power in the Department of Registration to adopt rules and supervise the educational standards prescribed relating to the licensing of the practice of naturopathy and other professions, trades and occupations. With power there goes great responsibility. It is the duty of the examining boards to make recommendations in writing to the director of the Department of Registration of their findings and conclusions after examination of an applicant, or upon a hearing for the revocation of a license or certificate, or upon charges justifying revocation or suspension for misconduct. U. C. A. 1943, Secs. 79-1-7, 8 and 9.

Plaintiff was granted two hearings, and indicated he did not desire to take the examination required, stating candidly that he did not think he could pass the technical examinations now given. Plaintiff's long period of practice was apparently such as to entitle him to his certificate under the laws of Arizona, and, as to the practice of his profession, might be more capable than an inexperienced graduate meeting the present requirements. There is a limit to the discretion administrative officers may exercise, or the severity of tests that may be set up. In the instant case there is no charge as to the proposed examination being an unfair one, yet it may often be the case that very capable practitioners in any profession could be tripped to a failing mark by an over-technical test.

There are some suggestions in the record of collateral correspondence, said to be private in nature, that might lend weight to the argument that there was some bias or even some irregularity or improper admission of evidence collateral to the issues. The statute relating to the establishment of a reciprocal licensing arrangement (Sec. 79-1-19, U. C. A. 1943) vests, as has been shown, some discretion in

the Department as to the general question of educational and examinational requirements and is a proper exercise of legislative action and does not contravene the privilege and immunities of citizens of the several states. *People* v. *Hasbrouck,* 11 Utah 291, 39 P. 918. The letter from the Department to plaintiff, citing Sec. 79-9-8 (4), R. S. U. 1933, must be taken to establish a policy and not merely an individual case.

Our statutes providing for the establishment of professional reciprocal relations with other states, districts or countries and providing for a determination of the issues by the courts, as well as other actions relating to professional and other licenses, and providing for determination by the courts of issues on questions of both law and fact, are legislative declarations of comity. Comity in reason and in a legal sense is a privilege granted not necessarily as a right. It has its uses and benefits, and its limitations.

"It may not run riot; it goes circumspectly. It must be courtesy in fact as well as name." *State ex rel. Walker* v. *State Board of Health,* Mo., 61 S. W. 2d 925, 927.

Proof that the Department acted arbitrarily, capriciously or unreasonably in rejecting an application for a license would be sufficient to justify the court in refusing to sustain its action. Proof as to these matters is wanting.

We therefore conclude that the Department of Registration and the court were within the province legislatively prescribed in going behind the certificate of good standing of plaintiff as a naturopath in the State of Arizona, and because of the failure of plaintiff, in the opinion of the Department, to meet the stated requirements, the trial court was not in error in the findings made. *Herzig* v. *Board of Medical Examiners,* 135 Cal. App. 41, 26 P. 2d 513; *Walkenhorst* v. *Kesler,* 92 Utah 312, 67 P. 2d 654, at 668; *State ex rel. Walker* v. *State Board of Health,* Mo., 61 S. W. 2d 925.

The stipulation of counsel near the close of the trial opened the doors to the court for the consideration and comparison of all the laws and the facts involved in the matter. The view we have taken of the matter, particularly in view of the stipulation referred to, makes is unnecessary to consider the questions relating to the proof of statutes of a foreign state.

There being no abuse of discretion shown, the denial of a license without examination was properly approved by the trial court. Judgment is affirmed. Costs to respondent.

WADE, J., concurs.

WOLFE, Chief Justice (concurring).

I concur on the ground that there is evidence to support the judgment of the trial court in favor of the defendant. This judgment, in effect, holds that the Director of the Department of Registration had discretion to determine whether in fact Arizona would or could grant reciprocity to a Utah naturopathic practitioner; that it was not bound by Exhibit B. Also that the Director had the power to determine whether the educational and examinational requirements were equal to those of Utah in the light of the fact that the statutes of Arizona exempted certain applicants from the taking of both the basic science tests and the professional tests by a grandfather clause.

LARSON, Justice (concurring).

I concur in the result upon the ground that reciprocal relations here involved are a matter of agreement between the proper departments in Utah and Arizona. Here, while Arizona had offered to reciprocate, it does not appear Utah had accepted the offer.

McDONOUGH, Justice (concurring).

I concur in the result. While the certification of Dr. Call by the Arizona State Board stated that such Board agreed

to reciprocate the action of Utah in admitting an Arizona practitioner to practice in Utah, nevertheless subsequent to receipt of such certificate, correspondence between individual members of the two state boards revealed that it was doubtful that the Arizona Board could, or perhaps clear that it could not, under the Statutes of Arizona, grant reciprocity to a Utah practitioner. This for the reason, as stated in such correspondence, that the Arizona law, relative to granting licenses to practice naturopathy, requires examination in the basic sciences, while that of Utah does not. In view of such fact, the Utah Board was justified in refusing a license to appellant.