## 9675

### GIBBES v. RICHARDSON.

(92 S. E. 333.)

1. GAME — GAME WARDEN — APPOINTMENT—TENURE OF OFFICE.—Under Cr. Code 1912, sec. 747, subd. 2, making the term of the game warden four years, the term cannot be extended.

2. GAME — GAME WARDEN — APPOINTMENT — TENURE OF OFFICE.—Such term is not extended by Const., art. XVII, sec. 11, subd. 6, as to officers holding over until appointment of their successors; such provision being made to bridge a passage of officers from service under the Constitution of 1868 to the Constitution of 1895.

3. GAME—GAME WARDENS—VACANCY IN OFFICE—How FILLED.—Assuming office of State game warden to be public trust, so that the Court should not permit it to remain vacant, it may· be declared vacant in view of Civil Code, sec. 695, providing for filling of vacancy by the Governor on nomination of the Audubon Society.

4. OFFICERS—VACANCY.—A vacancy in a public office occurs during a recess of the legislature, even though it was initialed before the recess.

5. EVIDENCE — PRESUMPTIONS — OFFICIAL ACTS.—The Court is bound to assume that those charged with execution of the law will not depart from it.

6. GAMES—GAME WARDEN—RIGHT TO OFFICE.—In view of Cr. Code 1912, sec. 747, subd. 2, as to appointment of the game warden, a nominee who fails to show that his name was sent to the Governor by the Audubon Society can have no title to the office.

7. CONSTITUTIONAL LAW — JUDICIAL POWER — UNREASONABLE STATUTE.— The Court cannot, on the ground that its provision for nomination by the Audubon Society of the game warden is absurd, read such provision out of Criminal Code, sec. 747.

Before DeVore, J., Columbia, April, 1917.   Affirmed.

Petition by W. H. Gibbes against Alfred A. Richardson. From the decree rendered, both parties appeal.

The decree of the trial Court was:

The complaint in this cause is brought under and by authority of sections 466 and 470 of the Code of Procedure 1912. To the complaint involved here, the defendant, A. A. Richardson, filed a demurrer. I shall not consider the demurrer, except in so far as the same may be affected by this decision.

The questions involved in the action which I shall pass upon are whether the plaintiff, W. H. Gibbes, is the chief game warden of South Carolina, or whether A. A. Richardson is the chief game warden, or whether that office is vacant. There were many authorities cited before me at the hearing, none of which do I consider directly in point. In so far as I am concerned, I need no authority for this decision other than the statute law of this State.

Taking up the claim of A. A. Richardson first. Subdivision 5 of section 747 of the Criminal Code, with reference to the chief game warden, reads: "His term of office shall be four years." The undisputed evidence shows that A. A. Richardson was appointed chief game warden of the State on the 25th of February, 1913, and that his term of office had expired at the time of the alleged appointment of W. H. Gibbes to that office. Under the statute law of this State, wherein it is declared the chief game warden's term of office shall be four years, his term ended at the expiration of that period. If I could legislate these words into the statute, "and until his successor is appointed and qualifies," the said A. A. Richardson would be entitled, under the decisions of the Supreme Court of this State, possibly to hold over; but I have no power to insert those words, and must, therefore, declare the law as I find it, that is, that his term

of office is for four years, and no longer; this being so, I am of the opinion that A. A. Richardson is not the chief game warden of South Carolina, and that he cannot hold over after the expiration of his term of office, which, under the law, is for four years.

With reference to the right or the claim of W. H. Gibbes to the office of game warden, it is well to quote the whole of subdivision 2 of section 747 of the Criminal Code 1912, which is as follows: *"The Appointment of Chief Game Warden.*—The mode of his appointment shall be as follows: The Audubon Society of South Carolina shall send in the name of a suitable person to the Governor. On approving this nomination, the Governor shall transmit the name, with his recommendation, to the State Senate. Should the Senate approve, the chief game warden shall assume the duties of his office by taking oath to administer the laws before any notary, magistrate or Judge or clerk of Court, and shall furnish bond in the sum of $2,000, to be approved by the Secretary of State. Should the Governor or the Senate not approve any nomination sent them, the name shall be returned to the said Audubon Society of South Carolina until a person suitable to both the Governor and the Senate shall have been named." It will be seen, under this statute, that the legislature names three actors, so to speak, who shall participate in the appointment of the chief game warden, to wit, the Audubon Society, the Governor and the Senate; not only that, but prescribes the duty of each actor, and lays down the order in which each is to act; not only that the duty of each is separate and distinct; not only that the duty of each is mandatory, because the word "shall" is used with reference to each; and under and by the express language of the statute, the first actor is the Audubon Society; it shall send in the name of suitable person to the Governor; the second actor is the Governor; "on approving this nomination the Governor shall transmit the name, with his recommendation, to the State Senate;" the third actor is the Senate;

13—107.

"should the Senate approve, the chief game warden shall assume the duties of his office by taking oath to administer the laws," and shall furnish bond. Neither of the actors have the power to destroy the right and duty conferred upon the other, by the express language of the statute law. It is mandatory upon all three of these actors to participate and have a voice in the appointment of the chief game warden. The undisputed evidence shows that this was not done in the alleged appointment of W. H. Gibbes to the office of chief game warden. Under the law, as above quoted, if the Audubon Society shall send in a name which the Governor does not approve, the law makes it the duty of the Governor to return the name to the said Audubon Society, and this procedure must continue until a person suitable to both the Governor and the Senate shall have been named. Under the undisputed facts this was not done in the alleged appointment of W. H. Gibbes, although the words used in the statute are mandatory. And, as before said, the word "shall" is used with reference to all three of the actors above named, in the performance of their duty, and, therefore, mandatory; in other words, the first actor, the Audubon Society, the second actor, the Governor, and the third actor, the Senate, must concur and agree upon the person before he can become the chief game warden of the State. That was not done in this case, according to the undisputed evidence and the facts.

It is contended, under section 694 of the Civil Code 1912, that "any vacancies which may happen in any of the said offices during the recess of the Senate may be filled by the Governor," and it names the officers who may be appointed: A commissioner of agriculture, commerce and industries; commission on State House and grounds; "chief game warden, on the recommendation of the Audubon Society of South Carolina"—which shows that the Governor cannot appoint, either while the Senate is or is not in session, except on the recommendation of the Audubon Society of South

Carolina, as is expressly stated in section 694, above referred to.

For the reasons above stated, I am of the opinion that W. H. Gibbes is not the chief game warden of South Carolina under his claim as set forth in his petition. It is, therefore, ordered, adjudged and decreed that the office of chief game warden of South Carolina be, and the same is hereby, declared vacant.

*Messsrs. R. H. Welch* and *Weston & Aycock,* for plaintiff, submit: *Action is brought under Code Civil Proc., ch. II, title XIII, secs. 466 to 470:* Term Crim. Code 747. *Distinguish* 35 S. C. 192; 89 S. C. 114. *No holding over by implication:* 93 U. S. 599; 30 Barb. 193; 46 N. Y. 57; 1 Paige 594; 13 Peters 230, 260. *Provision as to other officers:* Crim. Code, sec. 748. *Shortest term to be preferred:* 23 A. & E. Ency. 409; 29 Cyc. 1396. *Rule in South Carolina:* 27 S. C. 436. *Method of appointment:* Civil Code, sec. 694; Crim. Code, sec. 747. *Construction of statute:* 86 S. C. 419; 104 S. C. 342, 347.

*Mr. W. H. Townsend,* for defendant, cites: *As power of appointment:* 89 S. C. 114; 92 S. C. 395, 396; 91 S. C. 398; 90 S. C. 7; 87 Am. St. Rep. 377. *Concurrence of different bodies:* 23 A. & E. Enc. of L. (2d ed.) 529; 29 Cyc. 1372. *Audubon Society:* Civil Code, secs. 919 to 921. *Power given private bodies:* 23 A. & E. L. (2d ed.) 342; 156 Ind. 187; 45 N. Y. 446. *Power to hold over pending appointment of successor:* 92 S. C. 400; 65 Md. 321, 323; 37 Cal. 614; 24 Ohio St. 22; 4 Md. 221; 14 Md. 40; Meecham Pub. Officers, sec. 397; Throop Public Officers, secs. 323, 325; 1 Dillon Munc. Corp., sec. 411; 23 A. & E. Enc. of L. (2d ed.) 412; 29 Cyc. 1399; 28 Cal. 44. *Dicta:* 7 S. C. 22, 23; 35 S. C. 192; 27 S. C. 436. *Public policy:* 66 S. C. 5; 2 High. Inj. (4th ed.), sec. 1315.

April 26, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The issue is the title to the office of chief game warden of the State; the issue is not whether an act of a person exercising that office is lawful. The distinction betwixt the two cases is well defined and is manifest.

We agree with the Circuit Court that when four years elapsed after the appointment and qualification of Mr. Richardson, as they did, then his term was ended. The statute created the office, and the words of the statute are "his term of office shall be four years." There is no warrant to add to or to subtract from these words; they speak for themselves; construction is resorted to when an instrument is ambiguous. *Cromer* v. *Boinest,* 27 S. C. 436, 3 S. E. 849.

But the defendant suggests that the Constitution has fixed (at article XVII, sec. 11, and subdivision 6) a policy that officers shall hold until the appointment of their successors. That provision of the Constitution was manifestly made to bridge a passage of officers over from service under the Constitution of 1868 to the Constitution of 1895. The first sentence of section 11 makes that plain.

It is further suggested by the defendant that the office of chief game warden is a public trust, and a Court will not allow a trust to go unperformed; and a persuasive case from Maryland is cited in support of that view. *Robb* v. *Carter,* 65 Md. 321, 4 Atl. 282. But in the instant case the office of chief game warden need not go vacant. At most, it would so go only until the General Assembly might meet in its next session. And more than that, the statutes now on the books made possible the appointment of a chief game warden today. That officer gets his nomination from the concurrent acts and wills of

the Audubon Society and the Governor. The General Assembly is now in recess, and the Audubon Society may now recommend, and the Governor may now nominate, a chief game warden to hold until the vacancy be filled in the mode provided by law, to wit, until the Senate shall confirm the nomination. Civil Code, sec. 695. And the person so named will be entitled to act as chief game warden.

The vacancy "occurs" during the recess, even though it was initiated before the recess.

The law, therefore, has provided how the office may be occupied; and we are bound to assume that those charged with the execution of the law will not depart from it.

We also concur with the Circuit Court that the plaintiff has no title to the office he seeks. He must show at least two things to prove title, to wit, the sending of his name to the Governor by the Audubon Society, and the approval of his name by the Governor. He has not shown the first thing. *Elledge* v. *Wharton*, 89 S. C. 114, 71 S. E. 657; *Gasque* v. *Singleton,* 100 S. C. 465, 84 S. E. 989.

The suggestion is made by the plaintiff that the General Assembly could not have intended to confer such power on the Audubon Society; and he cites *Stackhouse* v. *County,* 86 S. C. 419, 68 S. E. 561, and *State* v. *Sawyer,* 104 S. C. 342, 88 S. E. 894.

There is nothing in these cases, apart from sentences in them referable plainly to the facts of them, which would warrant us to read out of section 747 of the Criminal Code the explicit direction that the Governor's nomination should have the recommendation of the Audubon Society. There is no warrant for us to hold that the requirement of the Audubon Society's recommendation of the nomination is "absurd;" we are bound to conclude the General Assembly was exercising a plain right, the wisdom of which was for it and not for this Court.

Our judgment is that the order of the Circuit Court be affirmed.